**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JOHN A. PIERRE,                                            Case No. 1:14-cv-58
      Plaintiff,                                    Barrett, J.
                                    Litkovitz, M.J.

      vs.

COMMISSIONER OF                                            **REPORT AND**
SOCIAL SECURITY,                                           **RECOMMENDATION**
      Defendant.

      Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's application for supplemental security income (SSI). This matter is before the Court

on plaintiff's Statement of Errors (Doc. 14), the Commissioner's response in opposition (Doc.

19), and plaintiff's reply memorandum (Doc. 22).

**I. Procedural Background**

      Plaintiff filed an application for SSI in October 2010, alleging disability since August 12,

2009, due to leg problems. Plaintiff's application was denied initially and upon reconsideration.

Plaintiff, through counsel, requested and was granted a de novo hearing before administrative

law judge (ALJ) Peter J. Boylan. Plaintiff, plaintiff's mother, plaintiff's case manager, and a

vocational expert (VE) appeared and testified at the ALJ hearing. On September 28, 2012, the

ALJ issued a decision denying plaintiff's SSI application. Plaintiff's request for review by the

Appeals Council was denied, making the decision of the ALJ the final administrative decision of

the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.   If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).   The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

548 (6th Cir. 2004).   Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy.   *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th

Cir. 1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since October 20, 2010, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The [plaintiff] has the following severe impairments: alcohol and substance abuse, status post alcohol related dementia episode, cerebellar dysfunction and mild brain atrophy with associated bilateral leg weakness and disturbed gait, and borderline intellectual functioning (20 CFR 416.920(c)).
>
> 3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(b) except: [plaintiff] is limited to performing simple, routine, and repetitive tasks, such as those demonstrated in past work; he is limited to simple work related decisions; he can have occasional interaction with supervisors and co-workers; his interaction with the public is limited to less than occasional, but it is not totally precluded; all interaction should be on a superficial basis; and, he is limited to tolerating occasional changes in the work setting.
>
> 5. The [plaintiff] is unable to perform any past relevant work (20 CFR 416.965).[1]
>
> 6. The [plaintiff] was born [in] . . . 1978 and was 32 years old, which is defined as a younger individual age 18-49, on the date the application was filed.  (20 CFR 416.963).

---

[1]Plaintiff's past relevant work was as a tree pruner and general laborer.   (Tr. 276).

7. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since October 20, 2010, the date the application was filed (20 C.F.R. 416.920(f)).

(Tr. 15-24).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

---

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 6,530 unskilled, sedentary jobs in the local and regional economy such as lamp shade assembler, optical goods assembler, hand trimmer, and polisher. (Tr. 62-63).

4

deciding whether the Commissioner's findings are supported by substantial evidence, the Court

considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

      The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination.   Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right."   *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

*See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was

otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving

weight to treating physician's opinion, thereby violating the agency's own regulations).

    **D.  Specific Errors**

      On appeal, plaintiff raises three assignments of error.   First, plaintiff contends the ALJ

erred in not finding that his leg impairment meets or medically equals Listing 1.02A.   Second,

plaintiff argues the Appeals Council erred in refusing to consider medical records submitted after

the ALJ's decision was rendered.   Third, plaintiff argues that the ALJ's residual functional

capacity (RFC) formulation is not supported by substantial evidence because it does not account

for his limitations in pace, persistence, and concentration.   (Doc. 14 at 4-13).   The Court will

address plaintiff's assignments of error in turn.

      1. Whether the ALJ erred in finding that plaintiff did not meet or medically equal
         Listing 1.02A.

      For his first assignment of error, plaintiff argues the ALJ erred at Step Three of the

sequential evaluation process in determining that his leg impairment did not meet or medically

equal Listing 1.02A.   Plaintiff asserts that the objective evidence of record, including physical

5

therapy records submitted after the ALJ rendered his decision, establishes that his leg impairment results in the inability to ambulate effectively. Plaintiff further asserts the ALJ's conclusion lacks substantial support in the record because, *inter alia*, plaintiff requires the constant use of a cane to ambulate. Plaintiff also challenges the adequacy of the ALJ's perfunctory Step Three discussion. (Doc. 14 at 4-7).

Listing 1.02A provides as follows:

1.02. *Major dysfunction of a joint(s) (due to any cause):* Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitations of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle) resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.02A. An "inability to ambulate effectively" is defined as "an extreme limitation in the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.*, § 1.00B2b(1). To be found capable of effective ambulation, the individual must be able to sustain "a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school." *Id.*, § 1.00B2b(2). Examples of ineffective ambulation include requiring a walker, two crutches or two canes, and the inability to walk a block at a reasonable pace on rough or uneven surfaces. *Id.*

6

The following is a brief recitation of the pertinent medical evidence of record. Plaintiff

has complained of right leg pain and walked with an abnormal gait since at least August 2009.[3]

*See, e.g.*, Tr. 281, 399-400, 402, 407 (plaintiff's complaints of leg problems and pain, worse with

walking); Tr. 291, 296-97, 299-300, 364, 404, 408, 500 (observations from various medical

providers that plaintiff's gait is unsteady, wide-based, ataxic, staggering, and shuffling).

Physical examinations revealed normal findings regarding plaintiff's leg flexibility and strength

and no doctor of record has found a definite objective cause for plaintiff's leg impairment. *See*

Tr. 292 (September 2009 examination of plaintiff's lower extremity joints was unremarkable);

Tr. 282 (an October 2009 examination of plaintiff's leg revealed no abnormal findings); Tr.

406-13 (consultative examining physician Martin Fritzhand, M.D., examined plaintiff on March

17, 2011, and found no joint, range of motion, or other abnormalities in his lower extremities

aside from a shuffling gait). However, two MRIs from 2009 showed mild generalized atrophy

of the brain and the cerebellum with extensive focal and confluent signal alteration in the

periventricular white matter. (Tr. 292). The neurologists who examined plaintiff in

Indianapolis believed that his gait problems and brain atrophy were likely related to alcohol use.

(Tr. 309-10). Plaintiff's treating physician, Joseph Kiesler, M.D., who treats plaintiff through

---

[3]In August 2009, plaintiff was hospitalized at Community Hospital East in Indianapolis for two months for psychiatric treatment. *See* Tr. 280-366. Plaintiff was brought to the hospital by a police officer for disorientation on August 13, 2009. (Tr. 285). Plaintiff was admitted for psychiatric evaluation and monitoring and initially treated with anti-psychotic medications which were discontinued after medical providers determined he did not suffer from psychosis. (Tr. 309). Because plaintiff demonstrated an inability to perform activities of daily functioning and was initially incontinent, medical providers referred him for neurological and rheumatological examinations. (*Id.*). Plaintiff was discharged in October 2009 with diagnoses of alcohol-related dementia, alcohol dependence in partial remission, cannabis dependence, and urinary tract infection. (Tr. 308). Upon discharge, plaintiff was reported as having significant improvement in his overall condition, including greater understanding of his medical issues and better orientation. (Tr. 310).

7

the Cincinnati Health Network Healthcare for the Homeless Program, similarly opined that

plaintiff has "findings consistent with cerebellar degeneration, potentially due to alcohol use."

(Tr. 500).  *See also* Tr. 409 (Dr. Fritzhand was unable to find any objective basis for plaintiff's

gait disturbance on physical examination).

Based on this evidence, the ALJ determined that plaintiff had the severe impairment of

cerebellar dysfunction and mild brain atrophy with associated bilateral leg weakness and

disturbed gait and limited plaintiff to sedentary work.[4]  (Tr. 15, 17).  However, the ALJ found

the impairment did not meet or medically equal Listing 1.02A because plaintiff "is able to

ambulate effectively, as defined in listing 1.00(B)(2)(b).  There is no evidence to suggest that

[plaintiff] requires an assistive device to walk."  (*Id.*).  The crux of plaintiff's challenge to the

ALJ's finding is that it lacks substantial support because: (1) the evidence considered by the ALJ

establishes plaintiff's inability to effectively ambulate; and (2) the evidence submitted

post-hearing establishes that plaintiff requires an assistive device (a cane) to walk.  The

undersigned finds that the ALJ's conclusion that plaintiff's leg impairment does not meet or

medically equal Listing 1.02A is supported by substantial evidence and should therefore be

affirmed.

The ALJ's determination that plaintiff is able to effectively ambulate is supported by the

medical evidence and by plaintiff's reports and testimony.  Based on his normal examination

findings, Dr. Fritzhand opined that despite plaintiff's shuffling gait, he would be capable of

---

[4]Sedentary work is defined by the Social Security regulations as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a).

performing a moderate amount of ambulating.   (Tr. 409).   Non-examining state agency

reviewing physician, Arthur Sagone, M.D., reviewed the record in April 2011 and found that

plaintiff was capable of walking about six hours in an eight-hour workday.   (Tr. 82-92).

Further, plaintiff testified that he was able to walk one mile and testified and reported that he

regularly walks to the library and to a local soup kitchen for meals as part of his daily activities.

(Tr. 41-43, 403).   This evidence substantially supports the ALJ's finding that plaintiff is capable

of effective ambulation.

Plaintiff relies on Dr. Kiesler's letter as evidence of his inability to effectively ambulate.

In his September 12, 2012 letter, Dr. Kiesler reported that plaintiff had an ataxic gait, wide-based

gait stance, abnormal heel-to-shin test, dysdisdochokinesis (inability to do rapid alternating

movements) and dysmetria (inability to do finger to nose testing).   (Tr. 500).   Dr. Kiesler

opined that "plaintiff's condition would create difficulty walking at a reasonable pace or at an

uneven terrain."   (*Id.*).   The ALJ afforded this note "significant weight" in acknowledgment of

Dr. Kiesler's treatment relationship with plaintiff.   (Tr. 22).   However, it was not afforded

"controlling weight" because there was no evidence establishing the length of frequency of his

treatment.   (*Id.*).   The ALJ's decision to discount Dr. Kiesler's findings is substantially

supported as there is no evidence in the record documenting the doctor's treatment relationship

with plaintiff or any attendant treatment or examination records that are consistent with or

support his opinion.   *See* 20 C.F.R. § 416.927(c) (in weighing a medical opinion, the ALJ may

look to the nature and length of the treatment relationship, how well the opinion is explained, and

whether it is supported by or consistent with the other record evidence).   *See also Walters v.*

*Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (finding that the ALJ reasonably rejected

treating physician's opinion where it was not supported by any treatment notes or clinical or objective evidence).   Given the record as a whole, the ALJ reasonably determined that plaintiff was able to effectively ambulate despite Dr. Kiesler's contrary opinion.

To the extent plaintiff argues the ALJ's decision lacks substantial support because the evidence he submitted to the Appeals Council after the ALJ rendered his decision contradicts the ALJ's conclusion that "[t]here is no evidence to suggest that [plaintiff] requires an assistive device to walk," (Tr. 15), this argument is not well-taken.   In August 2013, after the ALJ hearing and decision, plaintiff submitted physical therapy treatment notes to the Appeals Council.   (Doc. 14, Ex. A).   This evidence shows that plaintiff attended three physical therapy sessions between March 7 and 23, 2012.   (*Id.* at 8).   At the March 7, 2012 session, plaintiff reported that he had not been using his cane for a few months because it needed a stopper and the therapist reported: "Gait Training: To correct deviations – advised [plaintiff] to use cane at all times (provided a stopper to put on his cane)[.]"   (*Id.*).   Plaintiff contends that because this evidence establishes that his physical therapist advised him to use a cane at all times, the ALJ's finding otherwise lacks substantial support.   (Doc. 14 at 6).

The District Court's review is limited to evidence that was before the Commissioner during the administrative proceedings. *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 685 (6th Cir. 1992). When the Appeals Council declines review, as it did in this case, it is the decision of the ALJ and therefore the facts before the ALJ that are subject to appellate review.   *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993).   The Court may not consider evidence presented for the first time to either the Appeals Council or the District Court in deciding whether to uphold, modify, or reverse the ALJ's decision.   *Id.* at 696.   *See also Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148

(6th Cir. 1996). Consequently, the Court may not consider the physical therapy progress notes that were presented to the Appeals Council in this case in determining whether to uphold, modify, or reverse the ALJ's decision. In any event, even if the Court could consider this evidence, the mere fact that a physical therapist advised plaintiff to use a cane does not establish that plaintiff is unable to ambulate effectively for purposes of meeting or medically equaling Listing 1.02A. *See* 20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.00B2b(1), (2) (ineffective ambulation is found where a claimant's use of a hand-held assistive device limits the functioning of *both* upper extremities, such as requiring a walker or two canes to walk). Plaintiff's use of a single cane does not satisfy the listing's requirements. *Id. See also Jackson v. Comm'r of Soc. Sec.*, No. 07-14184, 2009 WL 612343, at *3 (E.D. Mich. Mar. 6, 2009).

In conclusion, the ALJ's finding that plaintiff does not have an impairment that meets or medically equals Listing 1.02A is supported by substantial evidence and, therefore, plaintiff's first assignment of error should be overruled.

2. Whether the Appeals Council erred in its consideration of evidence submitted after the ALJ rendered his decision.

Plaintiff's second assignment of error relates to the physical therapy evidence he submitted to the Appeals Council following the ALJ's denial of his claim for disability benefits. Plaintiff asserts the Appeals Council failed to properly address this evidence because its November 21, 2013 Order denying plaintiff's request for reconsideration lists only the brief of plaintiff's counsel as additional evidence received, and does not specifically list the physical therapy records. (Doc. 14 at 8-9, citing Tr. 1-5). Plaintiff argues the Appeals Council "failed to accept and consider the new and material evidence" in contravention of its regulatory duties.

11

(*Id.* at 9) (citing 20 C.F.R. § 404.970(b)).   For the following reasons, plaintiff's second assignment of error should be overruled.

First, plaintiff has not established that the physical therapy progress notes were not considered by the Appeals Council.   Plaintiff has submitted as an exhibit the progress notes as well as his brief to the Appeals Council and a certified mail receipt showing that these documents were submitted in August 2013.   *See* Doc. 14, Ex. A.   It is therefore reasonable to assume that the Appeals Council received both plaintiff's counsel's brief and the physical therapy evidence. However, the Social Security Regulations do not require the Appeals Council to itemize the evidence it receives and considers or to include such evidence as part of the administrative record.   *See* 20 C.F.R. § 416.970(b) (obligating the Appeals Council only to *consider* additional evidence provided it is "new and material"[5] and relates to the period on or before the date the ALJ tendered a decision).   The fact that the Appeals Council did not reference the physical therapy notes in its order does not establish, as plaintiff asserts, that this evidence was not considered.

Second, even if the Appeals Council erroneously failed to consider this evidence, this Court lacks jurisdiction to review the Appeals Council's orders.   "Only final decisions of the [Commissioner] are subject to judicial review under [42 U.S.C.] § 405(g)."   *Willis v. Sec'y of HHS*, No. 93-6337, 1995 WL 31591, at *2 (6th Cir. Jan. 26, 1995) (citing *Califano v. Sanders*, 430 U.S. 99, 108 (1977)).   "When the [A]ppeals [C]ouncil denies review, the decision of the ALJ becomes the final decision of the [Commissioner]."   *Casey v. Sec'y of HHS*, 987 F.2d 1230,

---

[5]Evidence is "new" if it was not available to the claimant at the time of the administrative proceeding. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).   To be considered "material," the new evidence must be relevant and probative to plaintiff's condition prior to the Commissioner's decision and must establish a reasonable probability that the Commissioner would have reached a different decision if the evidence had been considered.

1233 (6th Cir. 1993).  "While new material evidence may be submitted for consideration to the [A]ppeals [C]ouncil pursuant to 20 C.F.R. § 404.970, on appeal [the Court] review[s] the ALJ's decision" and not the actions of the Appeals Council.  Therefore, this Court is limited to review of the ALJ's decision and lacks jurisdiction over the decision-making process of the Appeals Council.

Accordingly, plaintiff's second assignment of error should be overruled.[6]

3. Whether the ALJ erred in formulating plaintiff's mental RFC.

The ALJ found that plaintiff retained the RFC to perform sedentary work with additional limitations, including limiting plaintiff to performing simple, routine, and repetitive tasks; making simple work-related decisions; having occasional and superficial interaction with supervisors and co-workers and less than occasional interaction with the general public; and tolerating occasional changes in the work setting.  (Tr. 17).  Plaintiff asserts the ALJ erred in formulating his RFC because the evidence of record establishes he has greater functional limitations than those found by the ALJ.  Specifically, plaintiff asserts the ALJ's RFC formulation fails to account for his limitations in concentration, persistence, and pace which he alleges would put him off-task 20% of the day and cause him to forget instructions after five minutes.  Plaintiff further argues the ALJ erroneously relied on his activities of daily living in

---

*Sizemore v. Sec'y of HHS*, 865 F.2d 709, 711 (6th Cir. 1988); *Oliver v. Sec'y of HHS*, 804 F.2d 964, 966 (6th Cir. 1986).

[6]In her response in opposition, the Commissioner argues that the physical therapy evidence does not warrant remand under Sentence Six of 42 U.S.C. § 405(g) because it is not "new and material" and because plaintiff has not shown good cause for not obtaining this evidence in a timely manner.  *See* Doc. 19 at 2-4.  The undersigned declines to address this argument because plaintiff does not move for a Sentence Six remand in his Statement of Errors, but argues only that the Appeals Council erred in failing to consider the physical therapy progress notes. Plaintiff's failure to present a developed argument that this evidence warrants a remand under Sentence Six amounts to a waiver.  *See McClellan v. Astrue*, 804 F. Supp.2d 678, 688 (E.D. Tenn. 2011) (and cases cited therein) (arguments in social security appeal not raised or supported in more than a perfunctory manner may be deemed waived).

13

finding he was capable of performing full-time work.   Lastly, plaintiff maintains the ALJ's finding at Step Five lacks substantial support because the VE's testimony was in response to hypothetical questions which, for the reasons stated above, failed to reflect the full array of plaintiff's functional limitations.   (Doc. 14 at 9-13).   The undersigned finds that the ALJ properly accommodated plaintiff's established functional limitations and that the RFC formulation is supported by substantial evidence.

The relevant medical evidence is summarized as follows.   There is no treating physician opinion in the record regarding plaintiff's mental RFC.   Therefore the only medical opinions in the record regarding plaintiff's limitations in concentration, persistence, and pace were those of: (1) consultative examining psychologist Norman L. Berg, Ph.D. (Tr. 398-405); (2) state agency reviewing psychologist Patricia Semmelman, Ph.D. (Tr. 82-91); and (3) Mary Moster, Ph.D., who conducted a psychological evaluation to determine plaintiff's ability to obtain and maintain employment (Tr. 487-99).[7]

Dr. Berg evaluated plaintiff on March 4, 2011, at the request of the Social Security Administration.   Dr. Berg found plaintiff to be satisfactorily oriented with no evidence of psychosis.   Plaintiff reported concerns about his physical health and its impact on his ability to hold employment; Dr. Berg found no indication of somatic delusions.   Dr. Berg reported that plaintiff appeared to function in the borderline range of intelligence and had difficulty determining if plaintiff's self-reported alcohol abuse affected his cognitive functioning.   Plaintiff reported difficulty with memory over the years; Dr. Berg noted that plaintiff's memory processes

---

[7]State agency reviewing psychologist Joseph A. Pressner, Ph.D., completed a Pyschiatric Review Technique in January 2010 and determined there was insufficient evidence in the file for him to formulate an opinion as to plaintiff's mental RFC.   *See* Tr. 384-97.

14

appeared commensurate with borderline level of intelligence.   On mental status examination,

plaintiff was able to recall three of three objects after ten seconds and again after five minutes.

Plaintiff was able to remember six digits forward and two digits backward and recall his

activities from the prior day.   Dr. Berg diagnosed plaintiff with alcohol and polysubstance

dependence reportedly in remission and borderline intellectual functioning and he assigned

plaintiff a Global Assessment of Functioning (GAF) score of 57.[8]   Dr. Berg opined that plaintiff

is mildly impaired in his ability to understand, remember, and follow instructions; mildly

impaired in his ability to maintain attention and concentration, persistence and pace to perform

simple tasks and to perform multi-step tasks; mildly impaired in his ability to relate to others,

including fellow workers and supervisors; and moderately impaired in his ability to withstand the

stress and pressures associated with day-to-day work activity.   Regarding plaintiff's

concentration specifically, Dr. Berg noted that plaintiff's was able to concentrate during the

evaluation, was persistent, and functioned in a moderate to moderately slow manner and opined

that his below average memory functions would mildly interfere with his attention and

concentration at times.   (Tr. 399-405).

State agency psychologist Dr. Semmelman reviewed the file on March 18, 2011.   Based

on her review of Dr. Berg's report, treatment notes from the Indiana hospital, and treatment notes

from Cincinnati Health Care for the Homeless, Dr. Semmelman found that plaintiff was not

significantly limited in his ability to remember locations and work-like procedures and

---

[8] A GAF score represents "the clinician's judgment of the individual's overall level of functioning."
American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev.
2000).   The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social,
and occupational functioning."   Id.   The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger
of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act
with clear expectation of death).   Id. at 34.   Individuals with scores of 51-60 are classified as having "moderate"
symptoms.   Id. at 32.

understand, remember, and carry out very short and simple instructions.   However, Dr. Semmelman found plaintiff had moderate limitations in his ability to understand and remember detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.   Dr. Semmelman opined that plaintiff was able to sustain concentration and attention for routine tasks which require few details to complete the tasks. (Tr. 82-91).

        Dr. Moster evaluated plaintiff in June 2011 and administered intelligence and achievement tests and a substance abuse screening inventory.   Dr. Moster observed plaintiff had good attention initially, which waned over time.   Based on plaintiff's testing results, Dr. Moster opined that plaintiff would have difficulty dealing with or understanding abstract concepts and may become anxious when faced with new tasks, but may be able to persist with short instructions that are repeated as needed.   Dr. Moster also found that plaintiff would need encouragement to persist with difficult tasks.   Dr. Moster reported that plaintiff exhibited difficulty with memory, concentration, and attention, which made evaluation of his cognitive function uncertain.   Dr. Moster diagnosed plaintiff with cannabis abuse and assigned him a GAF score of 60.   Dr. Moster opined that plaintiff would benefit from a dynamic and stimulating work environment that was mentally engaging given his limited attention span.   (Tr. 487-99).

        The record also contains psychologically based medical records from plaintiff's two-month hospitalization in 2009.   These records demonstrate that plaintiff was disoriented on

16

admission and unable to answer questions.   (Tr. 285, 294).   A September 1, 2009 neuro-psychological examination revealed that plaintiff was severely to profoundly impaired in executive functioning, verbal learning and memory, visual memory, and visual-spatial ability. (Tr. 354).   However, on discharge one month later, plaintiff was reported as "doing quite well" and was fully oriented.   (Tr. 310).   Plaintiff was further reported as being aware that most of his issues were related to alcohol use and that he should stay away from alcohol and drugs.   (*Id.*).

The above evidence substantially supports the ALJ's determination that plaintiff retains the mental RFC to perform simple, routine, and repetitive tasks and to make simple work related decisions.   The medical sources of record unanimously found that plaintiff retained the capacity to perform simple tasks and that his limitations in concentration and attention were mild and did not preclude employment.   While plaintiff argues he would be off task 20% of the day and that his memory problems cause him to forget what he was told after five minutes, there is no medical evidence in the record supporting these alleged limitations.   To the extent plaintiff cites to the findings from his neuropsychological examination from September 2009 to establish these limitations, this argument fails to acknowledge that the medical providers treating him found that he had improved and was doing "quite well" on discharge.   *See* Tr. 310, 353-54.   The ALJ considered this evidence and reasonably determined, based on plaintiff's ability to maintain concentration and attention during psychological testing, plaintiff's reports of reduced substance abuse, and the examination findings and opinions of Drs. Berg, Moster, and Semmelman, that plaintiff had "recovered most of his functional ability since that time."   (Tr. 21).   The Court therefore finds that the ALJ's RFC formulation is supported by substantial evidence.

17

Plaintiff further argues the ALJ erred by relying on activities of daily living in formulating his RFC and finding he was capable of performing full-time work.   At the ALJ hearing, Levon Brown, plaintiff's case manager at Paths to Recovery,[9] testified that plaintiff panhandles and collects and turns in aluminum cans in order to obtain money for alcohol.   (Tr. 55-56).   Plaintiff contends the ALJ "suggested" that if plaintiff was able to collect and turn in cans, he was capable of performing a range of sedentary work on a full-time basis.   (Doc. 14 at 11).   The ALJ cited Mr. Brown's testimony regarding plaintiff's can collection activity in support of his determination that plaintiff's subjective allegations and testimony were not fully credible.   (Tr. 18, 21).   Specifically, the ALJ stated that Mr. Brown's testimony "shows [plaintiff] turns in cans and collects cans in order to get money for alcohol.   This is plainly inconsistent with allegations that he is unable to walk and stand, or allegations that he is unable to focus or has bad memory.   If he is able to do this, he should be able to do a range of simple sedentary work."   (Tr. 21).   Taken out of context, this final sentence could arguably be viewed as an improper conclusion that plaintiff is capable of performing work on a full-time basis based solely on his ability to collect cans, an activity plaintiff performs at his own pace and schedule. *See Rogers*, 486 F.3d at 248-49 (finding ALJ erred by emphasizing the plaintiff's activities of daily living, including driving, cleaning, and animal care, in determining she could perform full-time work because such "minimal daily functions are not comparable to typical work activities" and because the ALJ did not take into account the manner in which plaintiff performed these activities).   Here, however, the ALJ based his RFC finding on the medical evidence of

---

[9]Paths to Recovery is an outreach program administered by the Greater Cincinnati Behavior Health Services focused on assisting homeless individuals by providing housing and substance abuse treatment.  *See* http://homeles s.sa mhsa.gov/resource/samhsa-grantee-spotlight-greater-cincinnati-behavioral-health-services-55416.aspx (last visited January 8, 2015).

record and his discussion of plaintiff's can collecting activity related specifically to his

determination to not fully credit plaintiff's subjective statements.   The ALJ's citation to this

evidence in this context was entirely permissible.   *See Keeton v. Comm'r of Soc. Sec.*, 583 F.

App'x 515, 532 (6th Cir. 2014) (citing 20 C.F.R. § 404.1572 and quoting *Walters v. Comm'r of*

*Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997)) ("Although the ability to [perform activities of daily

living] is not direct evidence of an ability to do gainful work, '[a]n ALJ may . . . consider [such]

activities . . . in evaluating a claimant's assertions of pain or ailments.'").   Accordingly, the ALJ

did not err in his consideration of plaintiff's can collection activity.

    Lastly, plaintiff maintains the ALJ erred at Step Five by relying on the VE's testimony in

response to hypothetical questions which did not encompass all of his supported limitations.   As

stated *supra*, the undersigned finds that the ALJ's RFC formulation is substantially supported by

the examination findings and opinions of Drs. Berg, Moster, and Semmelman.   The ALJ posed

hypothetical questions to the VE which incorporated the limitations contained in his final RFC

formulation and which accurately portrayed plaintiff's abilities and limitations.   *See Parley v.*

*Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987).   There is no medical evidence supporting

greater limitations than those reflected in the prescribed RFC formulation.   Accordingly, the

ALJ's reliance on the VE's testimony, that there exists work in the national economy which

plaintiff can perform, is supported by substantial evidence.

    For these reasons, plaintiff's third assignment of error should be overruled.

**III.  Conclusion**

    For the reasons stated herein, the undersigned recommends that the ALJ's decision be

**AFFIRMED** and that this matter be closed on the docket of the Court.


Date: ___1/14/15___

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JOHN A. PIERRE,
    Plaintiff,

  vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-cv-58
Barrett, J.
Litkovitz, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations. This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report

objected to and shall be accompanied by a memorandum of law in support of the objections. If

the Report and Recommendation is based in whole or in part upon matters occurring on the

record at an oral hearing, the objecting party shall promptly arrange for the transcription of the

record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems

sufficient, unless the assigned District Judge otherwise directs. A party may respond to another

party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make

objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn*,

474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).